**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JEFFREY C. GRUNE,**

                                        **Plaintiff,**

      **vs.**                                                          **1:22-CV-857**
                                                                    **(MAD/TWD)**

**HAZEL HERNANDEZ,** *Code Enforcement Officer,*
*also known as "Cissy,"*

                                        **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**JEFFREY C. GRUNE**
225 Ogden Mill Plaza
Cohoes, New York 12047
Plaintiff *pro se*

**BAILEY, JOHNSON & PECK, P.C.**          **JOHN W. BAILEY, ESQ.**
5 Pine West Plaza, Suite 507              **RYAN P. BAILEY, ESQ.**
Washington Avenue Extension
Albany, New York 12205
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

On August 18, 2022, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983,

claiming that Defendant violated his rights under the Fourteenth Amendment of the United States

Constitution. *See* Dkt. No. 1. Currently before the Court is Defendant's motion to dismiss. *See*

Dkt. No. 12.

**II. BACKGROUND**

According to the complaint, from May 1, 2010 to September 1, 2021, Plaintiff resided

with Greta Koons in a mobile home she owned at Lot 26 in the Ski Lodge Trailer Park in New

Lebanon, New York.  *See* Dkt. No. 1 at 2.  On December 13, 2018, two "maintenance men," hired by the Ski Lodge Trailer Park, cut down a large tree, which dropped on Ms. Koons' home.  *See id.* at 5.

On January 4, 2019, Ms. Koons and Plaintiff went to the Code Enforcement Office for the Town of New Lebanon and told Defendant Hernandez, the Code Enforcement Officer, that their landlord's handymen had dropped a large tree on their home, causing damage.  *See id.*  After Ms. Koons showed Defendant pictures of the damage, Defendant asked to inspect the home.  *See id.*

Once at the home, "Defendant looked at the damage and said she was unsure if she should make [them] vacate the home." *Id.*  Defendant then called "the Town Engineer and/or the Town Attorney, saying she was 'on the fence' about vacating [them] and said 'it's probably better to err on the side of caution.'" *Id.*  After the call, Defendant informed Plaintiff and Ms. Koons that they had three days to vacate the home and that a Notice to Vacate and Repair would be issued.  *See id.*  The January 9, 2019 Notice to Vacate and Repair informed Plaintiff and Ms. Koons that they had, among other things, thirty days to make repairs, that a building permit was required, and that a certified mobile home contractor was required to make the repairs.  *See id.*  The notice also warned that failure to follow the directives may result in further legal action.  *See id.*  The notice, however, does not advise that Plaintiff and Ms. Koons had the right to a hearing, despite the fact that New Lebanon Town Code, Chapter 83, § 83-3 requires that such notices provide the time, date and location of a hearing.  *See id.* at 6.

In his complaint, Plaintiff notes that he and Ms. Koons spoke with Defendant on several occasions, and that she told them that she had a "good working relation[ship]" with their landlord, and that she is "not an engineer" and "learning as she goes." *Id.*  Plaintiff further states that Defendant informed him and Ms. Koons that the landlord failed to get a building permit when repair work was being done on a mobile home owned by the landlord.  *See id.*  Moreover,

Plaintiff claims that there is no record of the landlord obtaining a required "Trailer Park Permit" for 2019 and that no sanctions have been imposed on the landlord despite this failure. *See id.* at 6-7.

Plaintiff notes that, after "finally finding a reliable, certified contractor," Ms. Koons repaired her mobile home. *See id.* at 7.  In September 2019, Defendant issued a Certificate of Occupancy and Ms. Koons and Plaintiff resumed living in their home. *See id.*

On August 31, 2021, Ms. Koons passed away. *See* Dkt. No. 1 at 2; *see also* Dkt. No. 16 at 5.  By agreement with Ms. Koons' estate administrator, Plaintiff temporarily continued living at the Lot 26 home while applying for senior citizen subsidized housing. *See* Dkt. No. 16 at 5.  On March 1, 2022, Plaintiff moved into senior housing in Cohoes, New York. *See id.*

In his first cause of action, Plaintiff alleges that he was denied the continued use and enjoyment of his home by Defendant without due process of law, "inasmuch as Defendant failed to schedule or hold a hearing as to the question of whether Plaintiff's home was 'unsafe.'" Dkt. No. 1 at 3.  In his second cause of action, Plaintiff alleges that he was denied the equal protection of the law by Defendant "who knew that other homeowners and/or residents of the Town had previously been provided a hearing(s) concerning an 'unsafe' structure." *Id.*  Finally, in his third cause of action, Plaintiff alleges that he was denied the equal protection of the law by Defendant "who required Plaintiff to obtain a Building Permit and hire specially certified contractor; while, at about the same time, not requiring the Lan[d]lord to get a Building Permit or use specially certified contractor when repairing a mobile home Landlord owned, and without Defendant making any inquiry relevant thereto." *Id.*

### III. DISCUSSION

**A.    Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of the 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [] complaint must be dismissed[,]" *id.* at 570.

4

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).  The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

**B.    Procedural Due Process**

In his first cause of action, Plaintiff alleges that he was denied the continued use and enjoyment of his home by Defendant without due process of law, "inasmuch as Defendant failed to schedule or hold a hearing as to the question of whether Plaintiff's home was 'unsafe.'" Dkt. No. 1 at 3.  Defendant argues that this cause of action must be dismissed because Plaintiff had an adequate, post-deprivation remedy and failed to avail himself of it.  *See* Dkt. No. 17 at 7-10.  In response, Plaintiff argues that Defendant's actions were not random and unauthorized and that they were undertaken by a high-ranking government official.  *See* Dkt. No. 16-1 at 10-11.

"To state a claim for deprivation of property without due process of law, a plaintiff must identify a property interest protected by the Due Process Clause." *Harrington v. County of Suffolk*, 607 F.3d 31, 34 (2d Cir. 2010) (citing *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010)).  The plaintiff must then demonstrate that he was deprived of that property right without due process of law.  *See Woe v. Spitzer*, 571 F. Supp. 2d 382, 387 (E.D.N.Y. 2008) (citing *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994)).  "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York ("HANAC")*, 101 F.3d 877, 880 (2d Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984)).  In the case of random, unauthorized

acts, a due process violation does not occur "so long as the State provides a meaningful postdeprivation remedy." *Id.* (citing *Hudson*, 468 U.S. at 531). "As the Second Circuit has emphasized ... 'where ... a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, an Article 78 proceeding is a perfectly adequate postdeprivation remedy.'" *Ahmed v. Town of Oyster Bay*, 7 F. Supp. 3d 245, 254 (E.D.N.Y. 2014) (quoting *Grillo v. N.Y.C. Transit Auth.*, 291 F. 3d 231, 234 (2d Cir. 2002)); *see also Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 467 (2d Cir. 2006) (citing *Locurto v. Safir*, 264 F.3d 154, 172 (2d Cir. 2001)); *Attallah v. New York College of Osteopathic Medicine*, 94 F. Supp. 3d 448, 455 (E.D.N.Y. 2015) (finding an Article 78 proceeding to be an adequate post-deprivation remedy). Even if an Article 78 proceeding would no longer be available, the fact that it was previously available satisfies the requirements of due process. *See O'Leary v. Town of Huntington*, No. 11-cv-3754, 2012 WL 3842567, *12 (E.D.N.Y. Sept. 5, 2012) (citing *Campo v. N.Y.C. Employees' Ret. Sys.*, 843 F.2d 96, 102 n.6 (2d Cir. 1988)) (other citation omitted). However, the Second Circuit also instructs that the availability of a post-deprivation procedure does not necessarily satisfy due process when the deprivation occurs in accordance with established state procedures. *See HANAC*, 101 F.3d at 880 (citing *Hudson*, 468 U.S. at 532).

In *HANAC*, a contractor filed a Section 1983 suit against New York City and former Mayor Giuliani after the Mayor ordered that any City contracts held by the contractor be terminated and that the contractor was effectively ineligible for any future City contracts. *See HANAC*, 101 F.3d at 879. The contractor, HANAC, alleged that the City violated the Fourteenth Amendment when it deprived it of its property interest in the contracts without due process. *See id.* at 880. After distinguishing between due process claims based on "established state procedures" and those based on "random, unauthorized acts," the Second Circuit stated that HANAC's claim was based on a random, arbitrary act. *See id.* at 881. The Second Circuit noted

6

that "[HANAC] makes no claim that the due process violation was caused by an established state procedure, such as the City Charter or PPB Rules.  To the contrary, HANAC argues that state officials acted in flagrant violation of the City Charter and PPB Rules." *Id.*  For that reason, the court found the availability of an Article 78 proceeding barred HANAC's due process claim.  *See id.* at 881-82.

In the years since *HANAC*, the Second Circuit "has noted, '[t]he distinction between random and unauthorized conduct and established state procedures ... is not clear-cut.'" *Rios v. Town of Huntington Housing Auth.*, 853 F. Supp. 2d 330, 338 (E.D.N.Y. 2012) (quoting Rivera-Powell, 470 F.3d at 465).  In *Rivera-Powell*, the Second Circuit further recognized that "the [Supreme] Court held that government actors' conduct cannot be considered random and unauthorized ... if the state delegated to those actors 'the power and authority to effect the very deprivation complained of ... [and] the concomitant duty to initiate the procedural safeguards set up by state law,' even if the act in question 'was not ... sanctioned by state law.'" *Rivera-Powell*, 470 F.3d at 465 (quoting *Zinermon v. Burch*, 494 U.S. 113, 138 (1990)).  In addition, the acts of high-ranking officials with final decision-making authority may not be considered "'random and unauthorized' conduct for the purposes of a procedural due process analysis." *Id.* (quoting *Velez v. Levy*, 401 F.3d 75, 91-92 & nn.14 & 15 (2d Cir. 2005)).  Examples of such "high ranking" state officials with final decision-making authority include the Chancellor of the New York City Schools, *see Velez*, 401 F.3d at 92 ("Levy is precisely the sort of 'high ranking' official identified by this line of cases"), and the Commissioner of the New York State Department of Health, *see DiBlasio v. Novello*, 344 F.3d 292, 303 (2d Cir. 2003) ("The Commissioner of the N.Y. D.O.H. is a high-level state official with final authority on many department matters").

Several Courts faced with the difficulty of distinguishing due process deprivations caused by random, unauthorized conduct from those caused by established state procedures, have

analyzed claims under both theories. *See e.g., Pierre v. N.Y.C. Taxi & Limousine Comm'n.*, No. 17-CV-973, 2017 WL 1417257, *4-5 (E.D.N.Y. Apr. 19, 2017); *Rios*, 853 F. Supp. 2d. at 339-44. For example, the court in *Rios* stated that whether the deprivation alleged was caused by the random and unauthorized actions of a state actor or by established state procedure was immaterial because, under the facts presented, analysis under either theory would lead to the same result. *See Rios*, 853 F. Supp. 2d. at 339. There, the court found that the availability of an Article 78 proceeding insured due process and that the established state procedures complied with the requirements of due process. *See id.* at 339-44. In *Pierre*, the court interpreted the plaintiff's complaint as pleading a "random deprivation of his rights" and found that the availability of an Article 78 proceeding protected his right to due process. *See Pierre*, 2017 WL 1417257, at *4. However, in the alternative, the *Pierre* court stated that the pre-deprivation procedures in place had previously been found to comport with due process. *See id.* at *5.

Courts also look to whether the plaintiff alleges that the state procedures in place are themselves to blame for a deprivation of due process. *See e.g., Ahmed*, 7 F. Supp. 3d at 254-55; *Byrne v. Ceresia*, No. 09 Civ. 6552, 2011 WL 5869594, *4 (S.D.N.Y. Nov. 22, 2011) (quoting *Terio v. Johann*, No. 05 Civ. 5918, 2006 WL 2819659, * 7 (S.D.N.Y. Sept. 29, 2006)). In *Ahmed*, the court noted that the plaintiffs did not challenge the adequacy of due process provided in an Article 78 proceeding or the adequacy of the applicable provisions of the Town Code. *See Ahmed*, 7 F. Supp. 3d at 254-55. Similarly, the *Byrne* court found it significant that the plaintiff "does not allege that the state procedures in place, if strictly complied with, would be insufficient due process under the Fourth Amendment." *Byrne*, 2011 WL 5869594, at *4 (quoting *Terio*, 2006 WL 2819659, at *7). The *Byrne* court characterized the plaintiff's argument as asserting that the defendants misapplied state law and acted in "'flagrant violation' of required procedures" which

supported the court's finding that the action was random and arbitrary. *Id.* (quoting *HANAC*, 101 F.3d at 880).

Ultimately, "[t]he underlying question is 'whether the state [was] in a position to provide for pre-deprivation process.'" *Polito v. City of New York*, No. 15-CV-2301, 2017 WL 6542457, *2 (E.D.N.Y. Dec. 21, 2017) (quoting *Hudson v. Palmer*, 468 U.S. 517, 534 (1984)). For this reason, courts may find complained of deprivations to be "random and unauthorized" unless a plaintiff is able to plausibly allege or establish "'that the deprivation ... was effected' through government policy." *Frith v. Hill*, No. 07 Civ. 5899, 2009 WL 3073716, *17 (S.D.N.Y. Sept. 23, 2009). When a plaintiff alleges that the deprivation of a property interest resulted from an "insidious conspiracy" among government actors, "there is no reasonable way that the state can provide pre-deprivation process." *Polito*, 2017 WL 6542457, at *2.

In *Hong Tang v. Grossman*, on October 16, 2016, the defendant, in his capacity as New York City Fire Marshal, served the plaintiff with an eviction notice. *See Hong Tang v. Grossman*, No. 19-cv-6099, 2021 WL 1091908, *1 (E.D.N.Y. Mar. 22, 2021). On October 13, 2016, the New York State Supreme Court issued a temporary stay of that notice, which was served on the defendant. *See id.* The temporary stay was lifted on October 27, 2016. *See id.* Pursuant to the New York City Marshals Handbook of Regulations, "'[t]he marshal must give the [tenant]-respondent an additional notice of eviction where a Court order stays the eviction after service of a notice of eviction and the stay later expires or is vacated, unless the Court specifically waives the requirement of an additional notice[.]'" *Id.* Rather than serving the plaintiff with an additional notice of eviction, however, the defendant "'took legal possession of the premises on November 3, 2016 by surprise,'" despite the plaintiff informing the defendant that no additional notice of eviction had been given and that such additional notice was required by law and the Marshals Handbook. *See id.* The plaintiff alleged that the Fire Marshal defendant's failure to abide by the

Marshals Handbook was a result of the City's failure to provide adequate training and supervision, and a result of municipal policies. *See id.*

In dismissing the plaintiff's procedural due process claim, the court held that New York provides adequate post-deprivation remedies to satisfy due process to protect against random and unauthorized conduct. *See id.* at *6.  The court noted that the plaintiff could have challenged the unlawful eviction either through a proceeding brought pursuant to the New York State Real Property and Procedure Law or pursuant to Article 78. *See id.* at *6-7, n.7.  Specifically, the court held that because the plaintiff "'does not allege that the state procedures in place, if strictly complied with, would be insufficient due process under the Fourteenth Amendment,' his procedural due process claim" must be dismissed. *Id.* at *7 (quoting *Terio v. Johann*, No. 05-cv-5918, 2006 WL 2819659, *7 (S.D.N.Y. Sept. 29, 2006), *aff'd*, 257 Fed. Appx. 374 (2d Cir. 2007)).

In *Byrne v. Ceresia*, No. 09 Civ. 6552, 2011 WL 5869594 (S.D.N.Y. Nov. 22, 2011), the plaintiff was a court security officer in the New York State Unified Court System. *See Byrne v. Ceresia*, No. 09 Civ. 6552, 2011 WL 5869594, *1 (S.D.N.Y. Nov. 22, 2011), *aff'd*, 503 Fed. Appx. 68 (2d Cir. 2012).  After being injured on the job on August 4, 2005, the plaintiff received several medical opinions indicating that the plaintiff would not be able to return to full work duties, but that he could engage in light duty activity. *See id.*  After receiving these medical reports, the plaintiff did not request and the defendants did not offer a light duty assignment, nor did the parties engage in any communication regarding a possible reasonable accommodation that might allow the plaintiff to return to work. *See id.* at *2.  Rather, the plaintiff simply did not report to work after sustaining his injury in August 2005. *See id.*  On August 4, 2006, one of the defendants, Judge Ceresia, the Administrative Judge for the Third Judicial District, sent a letter informing the plaintiff that the Office of Court Administration was terminating his employment

effective immediately.  *See id.*  In his letter to the plaintiff, Judge Ceresia failed to apprise him of

(1) the reasons for his termination; (2) his right to contest the decision; (3) the process for

contesting the decision; and (4) that, upon contesting the decision, his termination would be held

in abeyance pending a final determination.  *See id.*  Initially, Judge Ceresia did not respond to a

letter from the plaintiff's counsel demanding rescission of his termination, an explanation of the

reasons for his termination, and alleging that his due process rights had been violated.  *See id.*

Upon receipt of a second such letter, Judge Ceresia responded, explaining the basis for the

termination, informed him of his right to request a hearing, but did not notify the plaintiff that his

termination would be stayed pending the outcome of any such hearing.  *See id.*  After a hearing

was held, the hearing officer found that the parties should have engaged in an interactive process

prior to the plaintiff's termination to determine whether a reasonable accommodation could have

facilitated his return to work and recommended that the plaintiff's notice of termination be

rescinded.  *See id.*  After receiving the hearing officer's recommendation, Judge Plumadore

confirmed the plaintiff's termination, finding that there was no accommodation that would allow

him to return to work.  *See id.* at *3.  The plaintiff then appealed that decision to Chief

Administrative Judge Ann Pfau, who upheld the decision.  *See id.*

In granting the defendants motion for summary judgment, the court noted that the plaintiff

was not alleging that the state procedures in place, if strictly complied with, would be insufficient

due process under the Fourteenth Amendment.  *See id.* at *4.  Rather, the plaintiff was asserting

that the manner in which the defendants misapplied state law deprived him of his employment

without due process.  *See id.*  Specifically, the court noted that because the plaintiff "'makes no

claim that the due process violation was caused by an established state procedure,' but rather

'argues that state officials acted in flagrant violation' of required procedures, he essentially

contends that 'the alleged deprivation of a protected property ... interest without due process of

law occurred because of a random and arbitrary act.'" *Id.* (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York ("HANAC")*, 101 F.3d 877, 880 (2d Cir. 1996)).  In such situations, the court found that a post-deprivation Article 78 proceeding is all that is required to satisfy due process.  *See id.*  Additionally, the court acknowledged that acts of high-ranking officials who are the "'ultimate decision-marker[s]' and have 'final authority over significant matters'" should not be considered "random and unauthorized" for purposes of this analysis.  *See id.* at *5 (quoting *Rivera-Powell*, 470 F.3d at 465) (other citations omitted).  However, the court held that Judges Ceresia and Plumadore were not "ultimate decision-makers" because it was Chief Administrative Judge Pfau who possessed and exercised the "final authority" to approve the plaintiff's termination.  *See id.*  The Second Circuit affirmed the grant of summary judgment.  *See Byrne v. Ceresia*, 503 Fed. Appx. 68 (2d Cir. 2012).

In the present matter, the complaint and Plaintiff's response make clear that Defendant acted in a random and unauthorized manner and that she was not the ultimate decision-maker with final authority.  As Plaintiff sets out in his response, the New Lebanon Town Code required the Notice to Vacate and Repair to include the fact that Plaintiff was entitled to a hearing before the Town Board to contest the propriety of the Notice to Vacate and Repair.  *See* Dkt. No. 16 at 48.  Moreover, the Town Code provides that, "[i]n cases of an emergency, where the above proceedings would result in delay and resulting injury to life or property, the supervisor of the town shall have the power to direct the Building Inspector to proceed at once to take such action as is needed to ensure the safety of affected persons and property." *Id.* at 49.  Additionally, as Plaintiff notes, pursuant to a September 2016 Technical Bulletin outlining occupants' due process rights, Defendant was required to provide Plaintiff and Ms. Koons notice of their right to a hearing before the Town Board and their right to appeal an unfavorable decision through an Article 78 proceeding.  *See id.* at 52-53.

In issuing the Notice to Vacate and Repair in this emergency situation, the complaint makes clear that Defendant failed to seek authorization from the Town Supervisor for permission to issue the order as required by the Town Code in emergency situations.  Additionally, Defendant failed to apprise Plaintiff of his right to a post-deprivation hearing before the Town Board and his right to appeal through an Article 78 proceeding.  As in *Byrne*, Defendant did not merely play "fast and lose with the rules," she simply "never took the rulebook off the shelf." *Ratajack v. Brewster Fire Dep't, Inc.*, 178 F. Supp. 3d 118, 143 (S.D.N.Y. 2016) (citing *Byrne*, 2011 WL 5869594, at \*4).

The arbitrary manner in which Defendant acted is further demonstrated by the Town Board hearing on May 9, 2017, addressing an unsafe home in the Town at which Defendant testified.  *See* Dkt. No. 1 at 7.  According to the complaint, "[a]t that time, the Town Attorney explained to Defendant that the formality of hearing was necessary to protect the rights of the owner, even though the owner was absent." *Id.*  As such, the complaint makes clear that Defendant was previously informed of her obligations to provide individuals with notice of their rights, yet she still failed to do so in the present matter.

Finally, the fact that Defendant did not inform Plaintiff that he had the right to a hearing before the Town Board or that he could challenge the Notice to Vacate and Repair through an Article 78 proceeding does not change this result.  The Supreme Court has held that due process does not require "individualized notice of state-law remedies which ... are established by published, generally available state statutes and case law." *City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999).  Once a deprivation has occurred, a plaintiff "can turn to these public sources to learn about the remedial procedures available to him.  The City need not take other steps to inform him of his options." *Id.*  Moreover, in reliance on *West Covina*, the Second Circuit recently confirmed "that the federal procedural due process guarantee does *not* require state

officials to inform individuals of all the procedural guarantees they enjoy under state law."

*Liberian Cmty. Ass'n v. Lamont*, 970 F.3d 174, 192 (2d Cir. 2020) (emphasis in original).

Accordingly, the Court grants Defendant's motion to dismiss as to Plaintiff's procedural due process claim.

**C.     Equal Protection**

In his second cause of action, Plaintiff claims that he "was denied the Equal Protection of the Law, by Defendant who knew that other homeowners and/or residents of the Town had previously been provided a hearing(s) concerning an 'unsafe' structure." Dkt. No. 1 at 3.  In this third cause of action, Plaintiff alleges that he "was denied the Equal Protection of the Law, by Defendant who required Plaintiff to obtain a Building Permit and hire specially certified contractor; while, at about the same time, not requiring the Lan[d]lord to get a Building Permit or use specially certified contractor when repairing a mobile home Landlord owned, and without Defendant making any inquiry relevant thereto." *Id.*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1).  The "prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class." *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

According to the Second Circuit, "there are 'several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause.'" *Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001) (quotation omitted).

> "A plaintiff could point to a law or policy that expressly classifies
> persons on the basis of race. Or, a plaintiff could identify a facially
> neutral law or policy that has been applied in an intentionally
> discriminatory manner. A plaintiff could also allege that a facially
> neutral statute or policy has an adverse effect and that it was
> motivated by discriminatory animus."

*Id.* (quotation omitted). Additionally, a plaintiff may claim selective prosecution, *United States v. Armstrong*, 517 U.S. 456, 465 (1996), or selective enforcement of the law, *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980); *see also Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000), based upon his or her membership in a particular class, compared with others similarly situated, *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 1999). Finally, a plaintiff may seek to prove discrimination under the "class of one" analysis, asserting he or she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" without otherwise claiming membership in a particular class or group. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In the present matter, Plaintiff has failed to plausibly allege an Equal Protection claim under any of the theories set forth above. Plaintiff has not identified a law or policy that classifies a person based on race, nor has he identified a neutral law that has been applied in a discriminatory manner or which has an adverse effect and that was motivated by a discriminatory animus. Most likely, Plaintiff is attempting to assert a claim for selective enforcement or class of one based on his reference to a hearing that was provided to another home owner prior to condemnation and the more favorable treatment received by his landlord. However, the claims under either theory must be dismissed. As to the selective enforcement claim, Plaintiff has failed to allege that he is a member of a protected class who was treated less favorably than others similarly situated. Further, Plaintiff has failed to allege that "'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel*, 232 F.3d at 103 (quotation omitted).  Finally, Plaintiff fails to state a class of one claim because the emergency nature of the situation at Plaintiff's house and the fact that Plaintiff and Ms. Koons asked Defendant to inspect their home provide a rational basis for the different treatment of Plaintiff when compared to the landlord.  *See Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 433 (E.D.N.Y. 2021).  Similarly, as to the property that was subject to a hearing before the Town Board in 2017, that property was an abandoned, unsafe property, and the hearing was held pursuant to a different section of the Town Code dealing with condemned properties that the Town is forced to deal with using Town funds.  *See* Dkt. No. 16 at 8-11.  Such facts are insufficient to plausibly allege a class of one Equal Protection claim.

Accordingly, the Court grants Defendant's motion to dismiss as to Plaintiff's second and third causes of action.[1]

## D.    Opportunity to Amend

Where a *pro se* complaint fails to state a cause of action, the court generally "'should not dismiss without granting leave to amend at least once when a liberal reading of the complaint

---

[1] Defendant also seeks dismissal of the complaint insofar as Plaintiff is seeking injunctive relief because "Plaintiff does not have present or future interest at risk of imminent harm." Dkt. No. 17 at 6.  A plaintiff "seeking future-oriented equitable relief cannot rely solely on past injuries to have standing to pursue such remedies, but must establish how they will be injured prospectively." *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (quotation omitted).  As Defendant correctly notes, Plaintiff's complaint and supplemental submissions do not support a plausible inference that Plaintiff has an existing or future property or liberty interest at risk of imminent harm.  Plaintiff no longer lives in the Town of New Lebanon and does not allege that he owns property in the Town.  Moreover, the fact that Plaintiff leases a storage unit within the Town does not demonstrate a risk of imminent injury arising from future enforcement of residential building codes, permits and/or certified contractors.  Finally, to the extent that Plaintiff is seeking injunctive relief to prevent these alleged constitutional violations from occurring to others in the future, he lacks third-party standing to seek such relief.  *See Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 55 (E.D.N.Y. 2017) (noting the general requirements for a party to demonstrate standing to seek injunctive relief on behalf of third parties) (citing cases).

gives any indication that a valid claim might be stated.'" *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotation omitted).   An amended complaint is intended to replace and supercede in its entirety the previous complaint.  *See Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998) (citation omitted).  Once accepted for filing, the amended complaint becomes the operative pleading, and the original complaint is no longer considered.  *See id.*  This requirement is buttressed by the Local Rules of Practice, which provide, in pertinent part, that amended pleadings must be complete pleadings which will supersede the original pleading in all respects.  *See* N.D.N.Y. L.R. 7.1(a)(4).  The Local Rules further state that a "party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference." *Id.*  "[T]his requirement eliminates the confusing nature of 'piecemeal' amended complaints." *Chapdelaine v. Keller*, No. 95-CV-1126, 1999 WL 34998130, *1 (N.D.N.Y. Sept. 28, 1999).

While Plaintiff's complaint fails to state a claim, and dismissal is warranted, he should nonetheless be afforded a final opportunity to amend in light of the special solicitude afforded *pro se* litigants in the Second Circuit.  *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).  Accordingly, Plaintiff may file an amended complaint, which shall supersede and replace in its entirety his original complaint.  Any proposed amended complaint submitted in response to this Memorandum-Decision and Order must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 12) is **GRANTED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that Plaintiff may file an amended complaint within **TWENTY (20) DAYS**

from the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within twenty (20) days

from the date of this Memorandum-Decision and Order, the Clerk of the Court shall enter

judgment in Defendant's favor and close this case without further order from the Court; and the

Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

 **IT IS SO ORDERED.**

Dated: September 18, 2023
         Albany, New York

Mae A. D'Agostino
U.S. District Judge

18