**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JEFFREY C. GRUNE,**

                                        **Plaintiff,**

          **vs.**                                                    **1:22-CV-857**
                                                                     **(MAD/TWD)**
**HAZEL HERNANDEZ,**

                                        **Defendant.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**JEFFREY C. GRUNE**
225 Ogden Mill Plaza
Cohoes, New York 12407
Plaintiff, *pro se*

**BAILEY, JOHNSON & PECK, P.C.**         **JOHN W. BAILEY, ESQ.**
5 Pine West Plaza, Suite 507            **RYAN P. BAILEY, ESQ.**
Washington Avenue Extension
Albany, New York 12205
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On August 18, 2022, *pro se* Plaintiff Jeffery C. Grune commenced this action by filing of

a complaint and paying the Court's filing fee. *See* Dkt. No. 1. Plaintiff alleged that Defendant

Hazel Hernandez violated his Fourteenth Amendment Due Process and Equal Protection rights

pursuant to 42 U.S.C. § 1983. *See id.* On November 7, 2022, Defendant filed a motion to dismiss

Plaintiff's complaint, which the Court granted on September 18, 2023. *See* Dkt. Nos. 12, 24.

Plaintiff filed a motion for reconsideration, *see* Dkt. No. 26, and appealed the Court's decision to

the Second Circuit.  *See* Dkt. No. 30.  Plaintiff amended his complaint, *see* Dkt. No. 27, and

Defendant moved to dismiss the amended complaint.  *See* Dkt. No. 33.

Presently before the Court are Plaintiff's motion for reconsideration, Defendant's motion to

dismiss, and the responses and replies thereto.  *See* Dkt. Nos. 26, 32, 33, 36, 38, 39, 40.[1]

## II. BACKGROUND

In Plaintiff's original complaint, he alleged that Defendant was a Code Enforcement

Officer for the Town of New Lebanon, New York.  *See* Dkt. No. 1 at 2.[2]  Between May 1, 2010

and September 1, 2021, Plaintiff lived with Greta Koons in a mobile home that Ms. Koons owned

in Ski Lodge Trailer Park in New Lebanon.  *See id.*

On December 13, 2018, workers hired by the Landlord cut down a tree that fell onto Ms.

Koons' home.  *See id.* at 2, 5.  Plaintiff and Ms. Koons spoke with Defendant on January 4, 2019,

about the tree and the damage it caused.  *See id.* at 5.  Defendant asked them if she could inspect

the home.  *See id.*  Defendant inspected the home, contacted the "Town Engineer and/or the Town

Attorney," and concluded that Plaintiff and Ms. Koons should vacate the home.  *Id.*  Defendant

gave Plaintiff and Ms. Koons three days to vacate their home and told them that a Notice to

Vacate and Repair would be issued.  *See id.*

Defendant issued a Notice to Vacate and Repair on January 9, 2019.  *See id.*  The Notice

indicated that "a tree 'had fallen on the roof.'"  *Id.*  The Notice instructed Plaintiff and Ms. Koons

that they had thirty days to get a building permit and make repairs which required the use of a

---

[1] Plaintiff filed a sur-reply to Defendant's second motion to dismiss.  *See* Dkt. No. 40.  Local
Rules 7.1 and 12.1 instruct that sur-replies are not permitted.  See N.D.N.Y. L.R. 7.1(a)(1),
12.1(a).  As Plaintiff is proceeding *pro se*, the Court will consider his sur-reply.  However,
Plaintiff is warned that compliance with this Court's Local Rules is mandatory and future non-
compliance may result in his filings being stricken from the docket.
[2] Citations are to the pagination generated by CM/ECF in the pages' headers.

New York State certified mobile home contractor.  *See id.*  Plaintiff contends that the Notice did

not advise of a right to a hearing.  *See id.* at 6.  Plaintiff alleges that the Landlord, when making

repairs to his own roof, was not required to get a permit or use a certified mobile home repairman.

*See id.*  He also contends that the Town of Lebanon informed Plaintiff that the Landlord was not

issued a 2019 trailer park permit, for which Defendant took no action.  *See id.* at 6-7.  Ms. Koons

spent $13,500 to repair the trailer.  *See id.* at 7.

       Plaintiff's first cause of action alleged that he "was denied the continued use and

enjoyment of his home by Defendant without Due Process of Law, inasmuch as Defendant failed

to schedule or hold a hearing as to the question of whether Plaintiff's home was 'unsafe'."  *Id.* at 3.

He also brought a cause of action for the denial of "Equal Protection of the Law, by Defendant

who knew that other homeowners and/or residents of the Town had previously been provided a

hearing(s) concerning an 'unsafe' structure."  *Id.*  Finally, Plaintiff alleged that he

> was denied the Equal Protection of the Law, by Defendant who
> required Plaintiff to obtain a Building Permit and hire specially a
> certified contractor; while, at about the same time, not requiring the
> Landlord to get a Building Permit or use specially certified
> contractor when repairing a mobile home Landlord owned, and
> without Defendant making any inquiry relevant thereto.

*Id.*  Defendant moved to dismiss the complaint, arguing that Plaintiff's complaint was barred by a

three-year statute of limitations.  *See* Dkt. No. 12-3 at 6-7.  Defendant also argued that Plaintiff

lacked standing to bring his claims.  *See id.* at 9-10.  In her reply brief, Defendant contended that

Plaintiff failed to avail himself of any meaningful postdeprivation remedy.  *See* Dkt. No. 17 at 7.

       The Court granted the motion to dismiss because Plaintiff failed to state either due process

or equal protection claims.  *See* Dkt. No. 24.  The Court granted Plaintiff leave to amend his

complaint.  *See id.*  Plaintiff first filed his motion for reconsideration.  *See* Dkt. No. 26.  He then

filed an amended complaint. *See* Dkt. No. 27. In his amended complaint, he realleged the same

facts as set forth in his original complaint. *See id.* He stated two causes of action: (1) an Equal

Protection claim under a "class of one" theory whereby Defendant required a building permit and

certified contractor for Plaintiff's repairs but did not require the same of the Landlord; and (2) an

Equal protection claim under a "class of one" theory because Plaintiff's home was declared

"unsafe" without an opportunity to be heard whereas a neighbor was afforded a hearing. *Id.* at 3.

Plaintiff filed an interlocutory appeal from the Court's Memorandum-Decision and Order a

week after filing his amended complaint. *See* Dkt. No. 30. Defendant then filed a motion to

dismiss Plaintiff's amended complaint. *See* Dkt. No. 33. Defendant argues that Plaintiff fails to

allege a "class of one" claim. *Id.* at 3.

On March 21, 2024, the Second Circuit dismissed Plaintiff's interlocutory appeal because

the appeal was not from a final order as required by 28 U.S.C. § 1291. *See* Dkt. No. 43.

### III. DISCUSSION

**A.    Motion for Reconsideration**

Plaintiff's amended complaint supersedes his original complaint in its entirety. *See*

*Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020) (quoting *In re*

*Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000)) ("It is true that 'an amended

pleading ordinarily supersedes the original and renders it of no legal effect'"). Thus, any opinion

on a motion for reconsideration would be advisory. *See Bass v. Doe # 3*, No. 9:22-CV-1107,

2023 WL 5948978, *3 (N.D.N.Y. Sept. 13, 2023) (citation omitted) ("[W]hen a plaintiff files an

amended complaint after filing a motion for reconsideration, the reconsideration motion is

mooted"); *see also Razzoli v. Richmond Univ. Med. Ctr.*, No. 23-CV-6697, 2024 WL 1435895, *2

(E.D.N.Y. Apr. 3, 2024); *Balentine v. Doe*, No. 9:21-CV-1383, 2022 WL 17818553, *2

(N.D.N.Y. Dec. 20, 2022); *Meserole v. Sony Corp. of Am.*, No. 08-CV-8987, 2009 WL 2001451, *1 (S.D.N.Y. July 9, 2009).  Accordingly, Plaintiff's motion for reconsideration is denied as moot.

**B.    Motion to Dismiss**

*1. Standard of Review*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* FED. R. CIV. P. 8(a)(2), with factual "heft to 'sho[w] that the pleader is entitled to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678

(citation omitted).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

### 2. *"Class of One" Equal Protection Claims*

"The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *Bill & Ted's Riviera, Inc. v. Cuomo*, 494 F. Supp. 3d 238, 245 (N.D.N.Y. 2020) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Although "the Equal Protection Clause is most commonly used to bring claims alleging discrimination based on membership in a protected class, where . . . the plaintiff does not allege membership in such a class, he or she can still prevail in what is known as a 'class of one' equal protection claim." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  "A plaintiff who is not a member of a constitutionally protected class, 'may bring an equal protection claim pursuant to one of two theories: (1) selective enforcement, or (2) "class of one."'" *Bill & Ted's Riviera*, 494 F. Supp. 3d at 245 (quoting *AYDM Assocs., LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 265 (N.D.N.Y. 2016), *aff'd*, 692 Fed. Appx. 78 (2d Cir. 2017)) (additional quotation omitted).  "Whether plaintiffs attempt to pursue a 'selective enforcement' or a 'class of one' equal protection claim, either theory 'require[s] a showing of similarly situated individuals or groups who were treated differently.'" *Kisembo v. NYS Off. of Child. & Fam. Servs.*, 285 F. Supp. 3d 509, 524 (N.D.N.Y. 2018) (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011)) (alteration in original).

A selective enforcement claim requires a showing, *inter alia*, that "the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.'" *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quotation omitted).  "When the class-of-one claim does not allege malice as the basis for the differential treatment, the claim requires the 'level of similarity between plaintiffs and the persons with whom they compare themselves . . . be extremely high.'" *Moxie Owl, Inc. v. Cuomo*, 527 F. Supp. 3d 196, 201-02 (N.D.N.Y. 2021) (quoting *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019)).  "'In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."'" *Id.* at 202 (quoting *AYDM Assocs.*, 205 F. Supp. 3d at 268 (additional quotation omitted).  "The purpose of requiring sufficient similarity is to make sure that no legitimate factor could explain the disparate treatment." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012).  "Accordingly, the plaintiff and the comparator must be *prima facie* identical in all relevant respects." *Moxie Owl*, 527 F. Supp. 3d at 202 (quotation and quotation marks omitted).

In Plaintiff's first cause of action, he purports to bring a "class of one" claim, alleging that Defendant inspected his home and ordered and required Plaintiff to obtain a building permit and certified contractor whereas the Landlord was not required to have a building permit and certified contractor for his own repairs.  Dkt. No. 27 at 3.  Plaintiff contends that "the situations are materially identical, highly similar and different treatment not based on government policy." *Id.*

Plaintiff alleges that Defendant told him that "the Landlord had not gotten a building permit for the work being done recently at the Landlord's Lot #1 Trailer." *Id.* at 7.  Plaintiff attached a letter to his amended complaint that was written by Defendant and to the Landlord.

*See id.* at 5-6, 47-48.  The letter instructs the Landlord of concerns related to various mobile homes in the Mobile Home Park, including the Landlord's Lot #1.  *See id.* at 47.  Defendant noted that as to Lot #1, "[r]ailings and fall guard is needed at least on one side of the 4 step main entrance stairs."  *Id.*  The letter informs the Landlord that "[w]hile some minor repairs may not require permits, it is always best to reach out prior to performing work on any home if you are unsure.  New roof coverings, stairs/railings/decks, home re-location and placement, slabs, structural work, heating systems, electrical work, etc. all require permits."  *Id.* at 48.  In Plaintiff's response to Defendant's motion to dismiss, Plaintiff explained the "similarities" between himself and the Landlord:

> Both my home and the Landlord-owned home at Lot #1 are in the Town of New Lebanon and in the Ski Lodge Trailer Park.  Both are "considered and treated as a single-family structure". . . .  Both were known by Defendant to be in need of roof-structure repairs.  Both were located on U.S. Route 20 in New Lebanon, NY and both are easily visible from the road.  Both were inspected by Defendant in Oct. 2018, from the outside.  Both Trailers are for residential use.  Both Trailers are at least 20 years old.

Dkt. No. 38 at 7-8.

Defendant notes that Plaintiff was not the homeowner, because Ms. Koons owned the home.  *See* Dkt. No. 39 at 8, n.3.  Defendant also argues that Plaintiff has not established the requisite high degree of similarly between himself and the Landlord because Plaintiff "fail[ed] to allege facts establishing that the repairs performed by the Landlord versus those performed by Plaintiff were similar . . . ."  Dkt. No. 33-1 at 8.  Specifically, Defendant contends that "Plaintiff does not plead that [the Landlord's] 'new roof coverings' were being installed because of an emergency situation.  Therefore, the conclusion remains the same: Defendant had a rational basis

for treating Plaintiff differently from Landlord given the emergency nature of the situation." Dkt. No. 39 at 9.

Plaintiff asserts in response that "Defendant and Counsel had no idea what type of repairs the Landlord was doing." Dkt. No. 40 at 2. Plaintiff states that the work on his home and the Landlord's home were for "structural roof repairs" and that "there was no 'emergency' situation" concerning his home because he had "vacated the home before Defendant even wrote her Notice." *Id.* Plaintiff states that the Landlord was repairing the roof and "repairing interior damage. Water infiltration through badly damaged roofs will cause interior wall and insulation damage. Common sense says repair the damages roof f[ir]st, and then repair interior damages to walls and insulation." *Id.*

Plaintiff's complaint does not contain any allegations about water damage. Plaintiff alleges only that he "noticed . . . that the Landlord had several men working on the roof of a trailer, the Landlord owned, on Lot #1." Dkt. No. 27 at 5. He states that he spoke with the two men who were working on the Landlord's trailer and they told Plaintiff that "they were still working on that Lot #1 trailer for the Landlord. Dave said the roof was done and they were working on the indoor walls, in the Landlord owned Trailer at Lot #1." *Id.* at 6. Plaintiff alleges that the Landlord was working on his roof in November 2017. *See id.* at 5. The letter from the Defendant to the Landlord concerning repairs and permitting is dated November 7, 2018, and does not contain information related to the Landlord's roof. *See id.* at 47-48.

These allegations do not sufficiently set forth facts to establish a class of one claim. Plaintiff has not established that he and the Landlord are "'*prima facie* identical in all relevant respects.'" *AYDM Assocs.*, 205 F. Supp. 3d at 268 (quoting *Neilson*, 409 F.3d at 104) (footnote omitted). As this Court previously concluded in its September 2023 Memorandum-Decision and

Order, "the emergency nature of the situation at Plaintiff's house and the fact that Plaintiff and Ms. Koons asked Defendant to inspect their home provide a rational basis for the different treatment of Plaintiff when compared to the landlord." Dkt. No. 24 at 16.

Plaintiff states in his response to Defendant's motion that his situation was not an "emergency," and that Defendant did not know what type of repairs the Landlord was doing. Dkt. No. 40 at 2. This supports the Court's conclusion. Because there is "no idea" what type of repairs the Landlord was working on, the Court cannot conclude that the repairs were sufficiently identical to Plaintiff's repairs. *Id.* Plaintiff provides no allegations concerning the process the Landlord underwent for his roof repairs or the extent of any damage to the Landlord's home. Plaintiff states that there was "no inquiry into [the Landlord's] repairs," but does not provide any allegations concerning the conversations the Landlord had with anyone about the repairs, whether the Town Board was aware of them, or whether the repairs were ordered by the Town Board. Dkt. No. 27 at 3.

Because Plaintiff has not set forth sufficient allegations for the Court to conclude that he and the Landlord experienced nearly identical situations, his "class of one" claim must be dismissed. *See Mattison v. Black Point Beach Club Assocs.*, 376 Fed. Appx. 92, 94 (2d Cir. 2010) (determining that a reasonable person could not find that a "class of one" plaintiff who was denied an easement to her non-landlocked property was similarly situated to a person who was granted an easement to his landlocked property); *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 604 (S.D.N.Y. 2010) (concluding that the circumstances were not sufficiently similar because "there is no allegation that the other developments were similar in size or scope to the proposed development, or that they were approved during the same time frame"); *Amid v. Vill. of Old Brookville*, No. 11-CV-3800, 2013 WL 527772, *7 (E.D.N.Y. Feb. 7, 2013) ("Absent is

any indication as to the similarity of the location or size of the neighbors' properties, or that the applications of such homeowners were accepted, rejected or in any way similar to [the p]laintiff's project").

In Plaintiff's amended complaint, he discusses another resident, "Mr. Munch." Dkt. No. 27 at 5. Plaintiff states that "Defendant saw a vacant home, owned by Mr. Munch, with a collapsed porch roof . . . . Mr. Munch, despite Notices, failed to appear at both Town Board Meetings of Feb. 14, 2017 and May 9, 2017." *Id.* Plaintiff attaches minutes from the May 9, 2017, Town Board Meeting. *See id.* at 14-33. During the meeting, Mr. Munch's property was discussed because it was determined to be unsafe as the roof had collapsed on the porch of the building. *See id.* at 15. Defendant tried to contact Mr. Munch, but "he could not be found" and he did not appear at the two board meetings which were scheduled to discuss his property. *Id.* at 16. The Town Board expressed concerns over the safety of the property because it was "right next to the Elementary School and the door is wide open." *Id.* at 18. The Town Board discussed whether the property should be boarded or demolished. *See id.*

Defendant argues that Plaintiff's and Mr. Munch's situations were different. *See* Dkt. No. 39 at 4. Defendant contends that "Mr. Munch's property was vacant, meaning that no one was at risk of being injured by the collapsing porch and that it was the Town and County's responsibility to determine how to make the structure on the property safe while the property went through foreclosure proceedings." *Id.* at 5. "Meanwhile, Plaintiff and Ms. Koons home was not vacant, and they had expressed a desire to continue to reside in the home, putting themselves at risk of injury based on the structural repairs necessary to their roof. Defendant had a rational basis for treating Plaintiff differently from Mr. Munch given the emergency nature of the situation." *Id.*

Plaintiff disagrees. He states that his "home too was vacant when the Notice was prepared by Defendant on Jan. 9, 2019. . . . I vacated my home on Jan. 7, 2019. . . . Defendant wrote a Notice to Repair on Jan. 9, 2019 . . . knowing my home was vacant . . ., but wouldn't arrange for Chapt. 83 hearing." Dkt. No. 40 at 1.

Plaintiff did not allege in his complaint that he vacated the home on January 7, 2019. Rather, he alleged only that, on January 4, 2019, "Defendant [] told Ms. Koons and I to vacate the home within 3 days . . . ." Dkt. No. 27 at 8. Regardless, even considering that Plaintiff did vacate the home, this allegation does not place his situation and Mr. Munch's situation on equal footing. Mr. Munch's home had been abandoned, it was going to be foreclosed on, it presented a safety hazard to school children, Mr. Munch could not be found, and the Town Board was trying to determine if it should be boarded up or demolished prior to the initiation of foreclosure proceedings. *See id.* at 14-33. Plaintiff temporarily vacated his home between January 7, 2019, and September 25, 2019, while the roof was being repaired. *See id.* at 9. As this Court previously concluded, these differences "are insufficient to plausibly allege a class of one Equal Protection claim." Dkt. No. 24 at 16. Thus, Defendant's motion to dismiss is granted.

### *3. Procedural Due Process*

Plaintiff's second cause of action in his amended complaint states as follows:

> Defendant violated Equal Protection, under a "class of one", by declaring my home "unsafe" and not offering a meaningful opportunity to be heard; while, 2 years earlier, Defendant declared a house 'unsafe' and gave multiple opportunities to be heard; and the situations are materially identical, highly similar and different treatment not rationally based on legitimate government policy.

Dkt. No. 27 at 3.

To the extent Plaintiff seeks to bring a "class of one" claim, using Mr. Munch as a comparator, the Court has already concluded that Plaintiff's allegations are insufficient to state such a claim.

Defendant interprets Plaintiff's second cause of action as seeking to "attempt[] to disguise a combination of [Plaintiff's] previous Procedural Due Process claims as an Equal Protection 'class of one' claim." Dkt. No. 33-1 at 9. Defendant argues that such a due process claim must be dismissed because Plaintiff did not exhaust state court remedies. *See id.* at 9-10.

Plaintiff argues that he did not reallege a due process claim because the "necessary Due Process elements clearly don't apply to any type of Equal Protection claim[,]" but "the current Equal Protection claim and the dismissed Procedural Due Process claim share some of the same underlying facts . . . " Dkt. No. 38 at 9-10 (emphasis omitted). Plaintiff states that "the term 'due process' doesn't appear in the Amended Complaint." *Id.* at 4.

Plaintiff is correct that he did not reference "due process" in his amended complaint. *See generally* Dkt. No. 27. However, insofar as he referenced "a meaningful opportunity to be heard," such a claim could be liberally construed as an alleged due process violation. Dkt. No. 27 at 3.

This Court thoroughly explained the requirements of pleading a procedural due process claim in its September 2023 Memorandum-Decision and Order. *See* Dkt. No. 24 at 5-14. "'To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process.'" *Dushane v. Leeds Hose Co. #1 Inc.*, 6 F. Supp. 3d 204, 214 (N.D.N.Y. 2014) (quoting *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013)). Defendant does not contest that Plaintiff alleged a property interest but argues that he failed to state a due process claim because he did not avail himself of available state remedies. *See* Dkt. No. 33-1 at 9.

13

"[E]xhaustion of state administrative remedies is not a prerequisite to bringing a federal claim under 42 U.S.C. § 1983." *Doe v. Zucker*, 520 F. Supp. 3d 217, 247 (N.D.N.Y. 2021), *aff'd sub nom. Goe v. Zucker*, 43 F.4th 19 (2d Cir. 2022) (collecting cases) (concluding that failure to exhaust did not preclude the plaintiff's substantive due process claim). "But '[w]hen § 1983 claims allege procedural due process violations, [the Court] nonetheless evaluate[s] whether state remedies exist because that inquiry goes to whether a constitutional violation has occurred at all.'" *Chase Grp. All. LLC v. City of New York Dep't of Fin.*, 620 F.3d 146, 153 (2d Cir. 2010) (quoting *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 468, n.12 (2d Cir. 2006)) (other citation omitted); *see also New York State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 169 (2d Cir. 2001) ("Exhaustion *simpliciter* is analytically distinct from the requirement that the harm alleged has occurred.  Under the jurisprudence, a procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies").

"It has long been the law in this Circuit that the availability of Article 78 as post-deprivation remedy bars claims for violations of procedural due process." *Cieslinski v. Cassino*, 78 F. Supp. 2d 234, 237 (S.D.N.Y. 1999) (citing *Hellenic-American Neighborhood Action Committee v. City of New York*, 101 F.3d 877 (2d Cir. 1996)); *see also Barzee v. Tyler*, No. 8:21-CV-902, 2022 WL 1406606, *8 (N.D.N.Y. May 3, 2022) (quoting, *inter alia*, *Chase Grp. All. LLC v. City of N.Y. Dept. of Fin.*, 620 F.3d 146, 153 (2d Cir. 2010)) ("Although Section 1983 'allows plaintiffs with federal or constitutional claims to sue in federal court without first exhausting state judicial or administrative remedies' . . . '[w]hen § 1983 claims allege procedural due process violations,' the Court may nonetheless evaluate whether state remedies exist 'because that inquiry goes to whether a constitutional violation has occurred at all'").  "Said differently,

14

'[w]hen there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty[,]' 'there is no constitutional violation (and no available § 1983 action).'" *Barzee*, 2022 WL 1406606, at *8 (quoting *Hellenic*, 101 F.3d at 882). "[T]he Second Circuit frequently affirms the dismissal of procedural due process claims brought by plaintiffs who had an Article 78 proceeding available to them." *Corsini v. City of New York*, No. 20-CV-05459, 2023 WL 4420113, *8 (E.D.N.Y. July 10, 2023) (collecting cases); *see also Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, 955 F. Supp. 2d 118, 129 (E.D.N.Y. 2013) (dismissing procedural due process claim concerning municipal employee and name-clearing hearing where the "plaintiff never brought an Article 78 proceeding in state court and did not set forth any basis for concluding that this available state remedy was inadequate").

"'[Article 78 is] an amalgam of the common law writs of certiorari to review, mandamus, and prohibition, [and] provides both a hearing and a means of redress for petitioners.'" *Barzee*, 2022 WL 1406606, at *8 (quoting *Hellenic*, 101 F.3d at 881). "'Additionally, constitutional issues can be decided in Article 78 proceedings.'" *Id.* (quotation and citation omitted); *see also Davis v. Cowin*, No. 9:10-CV-0081, 2011 WL 4565858, *5 (N.D.N.Y. Aug. 12, 2011). Moreover, "cases from both the Supreme Court and [the Second Circuit] make clear that the federal procedural due process guarantee does not require state officials to inform individuals of all the procedural guarantees they enjoy under state law." *Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 192 (2d Cir. 2020) (citations omitted).

Plaintiff filed a letter requesting to amend his amended complaint. *See* Dkt. No. 41. In the letter, he states that his motion for reconsideration and notice of appeal "indicate [his] position to dismissal of the Due Process claim . . . ." *Id.* at 1. In his motion for reconsideration, Plaintiff argues that an Article 78 proceeding would not have been available to him because there was no

"final" decision as a hearing was not held.  Dkt. No. 26-2 at 6.  Plaintiff also takes issue with the Court's application of the "random and unauthorized" act case law concerning due process violations in the Court's September 2023 decision.  *See id.* at 8.  Plaintiff contends that "[t]he existing record . . . is insufficient to determine if Defendant needed, or obtained, Supervisor Authorization."  *Id.* at 9.

Plaintiff is correct that New York State has exhaustion requirements for bringing an Article 78 action.  *See Walton v. New York State Dep't of Corr. Servs.*, 8 N.Y.3d 186, 195 (2007) ("Those who wish to challenge agency determinations under article 78 may not do so until they have exhausted their administrative remedies").  "'The focus of the "exhaustion" requirement . . . is not on the challenged action itself, but on whether administrative procedures are available to review that action and whether those procedures have been exhausted.'"  *Id.* (quoting *Church of St. Paul & St. Andrew v Barwick*, 67 N.Y.2d 510, 521 (1986)); s*ee also Dukes v. New York City Employees' Ret. Sys.*, 361 F. Supp. 3d 358, 371 (S.D.N.Y. 2019) ("When a plaintiff challenges an established state procedure that takes place before the deprivation of an interest, the availability of a postdeprivation procedure – like a CPLR Article 78 proceeding – does not satisfy due process; the predeprivation process itself must be adequate").

Additionally, "a CPLR article 78 proceeding [generally] may not be used to challenge a nonfinal determination by a body or officer.'"  *Cor Route 5 Co., LLC v. Vill. of Fayetteville*, 147 A.D.3d 1432, 1433 (4th Dep't 2017) (quoting *Matter of Young v. Board of Trustees of Vil. of Blasdell*, 221 A.D.2d 975, 977 (4th Dep't 1995), *aff'd* 89 N.Y.2d 846 (1996)).  "A determination is 'final and binding' where, after a 'pragmatic evaluation' of the context . . . it can be said that the agency 'reached a definitive position on the issue that inflicts actual, concrete injury and . . . the injury inflicted may not be prevented or significantly ameliorated by further administrative action

or by steps available to the complaining party.'" *FMC Corp. v. New York State Dep't of Env't Conservation*, 143 A.D.3d 1128, 1130-31 (3d Dep't 2016), *rev'd on other grounds*, 31 N.Y.3d 332 (2018) (quotation omitted).

However, "'[n]o procedural due process claim exists if the lack of due process prior to the termination of the protectable interest at issue occurred based on random, unauthorized acts by state employees.'" *Dukes*, 361 F. Supp. 3d at 371 (quoting *King v. New York City Emps. Ret. Sys.*, 212 F. Supp. 3d 371, 400 (E.D.N.Y. 2016)).  Moreover, as this Court thoroughly explained in its September decision, "'where . . . a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, an Article 78 proceeding is a perfectly adequate postdeprivation remedy." Dkt. No. 24 at 6 (quoting *Ahmed v. Town of Oyster Bay*, 7 F. Supp. 3d 245, 254 (E.D.N.Y. 2014)); *see also Hellenic*, 101 F.3d at 881 ("We have held on numerous occasions that an Article 78 proceeding is a perfectly adequate postdeprivation remedy" where "the alleged deprivation of a protected property and liberty interest without due process of law occurred because of a random and arbitrary act"); *Dukes*, 361 F. Supp. 3d at 371 ("[T]he availability of a CPLR Article 78 proceeding generally provides an adequate postdeprivation remedy to cure inadequate predeprivation process based on random and unauthorized acts by state employees"); *King*, 212 F. Supp. 3d at 400 (same).

Plaintiff attaches numerous documents to his amended complaint.  First, he provides the Town Code which mandates that any notice concerning an unsafe building "shall further provide for a hearing to be held before the Town Board at a time and place to be specified, at which hearing the owner or persons having an interest in the property or structure will have an opportunity to appear and respond to the notice to repair or remove." Dkt. No. 27 at 44.  The Town Code also explains that "[i]n cases of emergency, where the above proceedings would

17

result in delay and resulting injury to life or property, the supervisor of the town shall have the power to direct the Building Inspector to proceed at once to take such action as is needed to ensure the safety of affected persons and property." *Id.* at 45. Second, Plaintiff provides Defendant's letter which notified Plaintiff of Defendant's determination that the structure was unsafe. *See id.* at 52-53. The letter does not contain notice for a hearing. *See id.* Defendant did "Cc" the Town Supervisor, Town Board Members, and the Town Attorney. *Id.* at 53. Plaintiff does not, however, allege that the Town Supervisor, Town Board Members, or the Town Attorney received the letter, reviewed it, or had any part in the process to deem Plaintiff's home to be unsafe or to order repairs. *See generally* Dkt. No. 27. Third, Plaintiff attaches a September 2016 Technical Bulletin which addresses "Due Process Issues – Unsafe Structures." *Id.* at 56. The Bulletin explains that due process requires notice and an opportunity to be heard which should include "notice of the time within which the owner/occupant must request a hearing and the manner in which the owner/occupant must make that request." *Id.* at 58. Defendant's letter did not include such notice. *See id.* at 52-53.

Plaintiff does not allege that he took part in any administrative proceedings or that there was a final decision from the Town Board. However, this does not negate the availability of an Article 78 proceeding because Plaintiff's allegations raise a due process claim based on Defendant's random and unauthorized acts.

In Plaintiff's motion for reconsideration, he states that "[t]he record does not 'make[] clear' Defendant did not seek authorization as the" Court's September Decision "says." Dkt. No. 26-2 at 7. In his amended complaint, Plaintiff does not state whether Defendant sought authorization from the Town Supervisor. However, nowhere in Plaintiff's amended complaint does he allege that a deprivation of his property was caused by an established state procedure. Rather, he

contends that he was deprived of his property solely because of Defendant's individual conduct—that Defendant failed to follow the established Town Codes.  *See* Dkt. No. 27 at 10.

Plaintiff does not argue that an Article 78 proceeding would have been inadequate to address his claims.  *See* Dkt. Nos. 38, 40.  Rather, an Article 78 proceeding would have provided an adequate remedy for Plaintiff's deprivation and "the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy."  *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (citations omitted); *see also Morgan v. Cnty. of Warren*, No. 1:21-CV-0278, 2022 WL 195065, *5 (N.D.N.Y. Jan. 21, 2022), *aff'd*, No. 22-345, 2022 WL 13691731 (2d Cir. Oct. 24, 2022) (dismissing due process claim because "if [the defendant's] actions were 'random and unauthorized,'" then an Article 78 proceeding requires dismissal and "the Complaint contains no factual allegations regarding the inadequacy of the Article 78 proceeding"); *O'Shea v. City of Kingston*, No. 1:22-CV-666, 2023 WL 4105492, *6-7 (N.D.N.Y. June 21, 2023) (holding that an available Article 78 proceeding to challenge the defendant's alleged unconstitutional taking of the plaintiff's property satisfied the requirements of due process, regardless of whether the plaintiff utilized the Article 78 proceeding); *Tang v. Grossman*, No. 19-CV-6088, 2021 WL 1091908, *6 n.7 (E.D.N.Y. Mar. 22, 2021) (noting that an Article 78 proceeding may also have been available to the plaintiff to challenge a notice of eviction issued against the plaintiff by the defendant); *Arizona Hudson Valley, LLC v. Allen*, No. 1:22-CV-1306, 2023 WL 3936640, *5-6 (N.D.N.Y. June 9, 2023) ("In the land-use context, courts in this Circuit have repeatedly held than the availability of an Article 78 proceeding in state court is a post-deprivation remedy that satisfies procedural due process.  Even assuming the prior issuance of the Special Use Permit qualified as a protected property interest, [the] plaintiffs have not plausibly alleged a violation of their procedural due process rights.  Among other things, [the]

plaintiffs have not alleged that an Article 78 proceeding in state court would be an inadequate way

to remedy the improper revocation of their Special [U]se Permit").

Finally, Plaintiff states in his sur-reply that he was not aware of any state remedies and

that this Court's September 2023 decision "finds Defendant 'was required' to advise [him] of state

remedies." Dkt. No. 40 at 2 (quoting Dkt. No. 24 at 12). In its September Decision, the Court

reviewed Plaintiff's response to Defendant's first motion to dismiss, which included the

September 2016 Technical Bulletin. *See* Dkt. No. 24 at 12. The Court stated that "Plaintiff notes,

pursuant to a September 2016 Technical Bulletin outlining occupants' due process rights,

Defendant was required to provide Plaintiff and Ms. Koons notice of their right to a hearing

before the Town Board and their right to appeal an unfavorable decision through an Article 78

proceeding." *Id.* (citing Dkt. No. 16 at 52-53). The Bulletin, quoting the 2016 Uniform Code

Supplement, explained that nothing in the Uniform Code Supplement

> shall be construed as authorizing any governmental unit or agency
> responsible for administration and enforcement of the Uniform
> Code to post, placard or condemn any such building or structure
> and/or to remove any owner or occupant or cause any owner or
> occupant to be removed from any such building or structure without
> providing such notice and opportunity to be heard (and, if
> applicable, right of appeal) as may be required under the applicable
> circumstances by applicable Constitutional provisions.

Dkt. No. 16 at 52-53; *see also* Dkt. No. 27 at 57-58.

First, the Court did not conclude in its September Decision that Defendant was required to

advise Plaintiff of available state remedies. Second, although the Technical Bulletin references

notice of a right to be heard and appeal, "'cases from both the Supreme Court and [the Second

Circuit] make clear that the federal procedural due process guarantee does *not* require state

officials to inform individuals of all the procedural guarantees they enjoy under state law.'"

*Torres v. City of New York through N.Y.C. Dep't*, 590 F. Supp. 3d 610, 625 (S.D.N.Y. 2022) (quoting *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 192 (2d Cir. 2020)).  "This rule means that due process does not 'requir[e] individualized notice of state-law remedies' when those remedies 'are established by published, generally available state statutes and case law.'"  *Id.* (quoting *City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999)).  "That makes sense.  'Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him.'"  *Id.* (quoting *Perkins*, 525 U.S. at 241); *see also Porter v. Town of Fine, New York*, No. 8:18-CV-1289, 2022 WL 4094516, *9 (N.D.N.Y. Sept. 6, 2022); *S.C. v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-1672, 2012 WL 2940020, *10 (S.D.N.Y. July 18, 2012).

Based on the foregoing, the availability of an Article 78 proceeding negates Plaintiff's ability to bring a due process claim regardless of the fact that he did not initiate such a proceeding.  *See Porter*, 2022 WL 4094516, at *9.  Thus, the Court grants Defendant's motion to dismiss.

## C.      Leave to Amend

As explained, Plaintiff filed a letter seeking to amend his complaint.  *See* Dkt. No. 41.  In the letter, he explains that he misunderstood the Court's September 2023 Decision and thought that his amended complaint could only concern his equal protection claims.  *See id.* at 1.  Plaintiff states that it was only after speaking with the Court's *Pro Se* Assistance Program that he learned that he was granted leave to amend his entire complaint, including the due process claim.  *See id.* He contends that his "pending motion to reconsider . . . and Notice of Appeal . . . indicate [his] position to dismissal of the Due Process claim under the 'random and unauthorized exception is

21

unwarranted on the facts and the law." *Id.* Therefore, he asks for leave to amend his amended complaint to re-plead his due process claim.

Generally, *pro se* litigants must be afforded at least one opportunity to amend their compliant. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). "However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend." *Baptiste v. Doe*, 680 F. Supp. 3d 186, 192 (N.D.N.Y. 2023). Plaintiff was already afforded one opportunity to amend his complaint, *see* Dkt. No. 24, which he took advantage of. *See* Dkt. No. 27. Although Plaintiff states that he did not re-allege his due process claim in his amended complaint, the Court liberally construed his amended complaint as raising both equal protection and due process claims. After reviewing those claims, the Court is dismissing Plaintiff's amended complaint for the same reasons it dismissed his original complaint: he failed to allege a "class of one" claim because he has not presented nearly identical comparators, and he failed to allege a due process claim based on random and unauthorized acts because of the availability of an Article 78 proceeding. As Plaintiff was previously afforded an opportunity to amend his complaint, and his amended complaint fails to cure the previously identified deficiencies, the Court declines Plaintiff's request for an additional opportunity to amend.

## IV. CONCLUSION

After careful review of the record, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Plaintiff's motion for reconsideration (Dkt. No. 26) is **DENIED as moot**; and the Court further

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 33) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's letter request to amend his amended complaint (Dkt. No. 41) is

**DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close

this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  June 3, 2024
            Albany, New York

Mae A. D'Agostino
U.S. District Judge